## SUPREME COURT.

THE PEOPLE *ex rel.* O'DONNELL agt. JAMES McNALLY and others.

*Elections — Naturalization — Citizenship — Proof of — When secondary evidence may be resorted to.*

Where a person asking to be registered claims to be a citizen by virtue of the naturalization of his parents, the best evidence of the naturalization of the parent would be the original certificate of naturalization, or a duplicate thereof, when it can be obtained. But a party may, in the matter of proving his citizenship, resort to secondary evidence when preliminary evidence cannot be obtained.

Where the relator stated to the inpectors, under oath, that he was born in Ireland and is of full age ; that he came to this country when he was about five or six years old; that his father was a citizen as early as 1853, and that he has seen his father vote, but is unable to give the date of his father's certificate of naturalization, although he had seen it; that the relator has voted in this city for the last fifteen years, and that he claimed the right to be registered on the ground of his father having been naturalized long before the relator became of age; that his father had been dead for over twenty years:

*Held,* that in the absence of anything impeaching the relator's testimony, his oath is *prima facie* evidence of the truth of his statements, and a case is made out in which it is impossible for the person seeking registration to produce the certificate of naturalization of his father.

*Held,* further, that in such a case the party is entitled to the benefit of secondary evidence to establish his right to vote, and that the alleged elector is just as competent to prove that fact as he is to prove that he is a native born citizen, is twenty-one years of age, his place of birth, his residence and that he has lived for the requisite time in the state, county and election district.

*Special Term, October,* 1880.

THIS is an application for a *mandamus* to compel the election inspectors of the twenty-first election district of the first assembly district to register the name of the relator.

*George W. Wingate* and *E. Ellery Anderson* for relator.

*Elihu Root,* for respondent.

The People *ex rel.* O'Donnell agt. McNally.

LAWRENCE, *J.* — Upon examining the affidavits in this case, I am of the opinion that the inspectors should register the name of the relator. No specific provision appears to be made in the registration act as to the manner in which those who claim to be citizens by virtue of the naturalization of their parents shall be registered. In such cases, of course, the best evidence of the naturalization of the parent would be the original certificate of naturalization, or a duplicate thereof, when it can be obtained. But I do not understand that a party may not, in the matter of proving his citizenship, resort to secondary evidence when preliminary evidence cannot be obtained ; and in the absence of any express provision in the statute to the contrary, I am not prepared to hold that such evidence may not be resorted to. The case stands, as to the facts, as follows : The relator stated to the inspectors, under oath, that he was born in Ireland and is of full age ; that he came to this country when he was about five or six years old ; that his father was a citizen as early as 1853 ; and that he has seen his father vote, but is unable to give the date of his father's certificate of naturalization, although he had seen it ; that the relator has voted in this city for the last fifteen years ; and that he claimed the right to be registered on the ground of his father's having been naturalized long before the relator became of age. He also stated to the respondents that his father has been dead for over twenty years.

I do not understand that it is denied by the respondents that such statements were made by the relator, under oath, to them ; but they aver that no evidence of citizenship was submitted to them by the relator in compliance with the requirements of chapter 675 of the laws of 1872, and that he declined to give any proof of his father's citizenship other than the statement that he knew that his father was a citizen, or to give any evidence as to when, where, or in what court, or before what officer his father was naturalized, or to produce any elector to testify as to his qualifications as an elector. Now, I agree with the relator's counsel that in the absence of any-

thing impeaching the relator's testimony, his oath is *prima facie* evidence of the truth of his statements. If his testimony is true, a case is made out in which it is impossible for the person seeking registration to produce the certificate of the naturalization of his father. Should he then lose his right to vote if, in point of fact, his father was a naturalized citizen ?

Such I do not believe to be the proper construction of the law. I think that in such a case the party is entitled to the benefit of secondary evidence to establish his right to vote, and that the alleged elector is just as competent to prove that fact as he is to prove that he is a native born citizen, is twenty-one years of age, his place of birth, his residence and that he has lived for the requisite time in the state, county and election district. The supreme court of this state held, in the case of *The People* agt. *Pease* (30 *Barbour's R.*, 588), that the boards of inspectors are not judges, nor do they exercise a judicial power in receiving or in counting votes. Justice ALLEN, in his opinion in that case, says : " They cannot summon witnesses or impannel a jury, or give the party interested a hearing. They can examine the proposed elector upon his oath, and there their power and means of judicial investigation cease; and it would be strange indeed if their conclusions should be final as against the state and all interested." And again he says : " The elector is made the judge of his own qualifications, and his conscience takes the place of the judgment and decision of every other tribunal for that occasion. The inspectors may probe his conscience, and instruct and advise, but they cannot decide upon his qualifications." Again, by section 64 of the act of 1872, as amended, fraudulent registration, or an attempt or offer to register in any election district by any person not having a right to register therein, is made a felony, and the punishment prescribed for the offense is imprisonment in a state prison for not less than one nor more than five years. When any party, therefore, applies to be registered, he does so only under the responsibility of his oath, but he cannot obtain an illegal registration

without committing a very grave crime, for which he is subject to severe and odious punishment.

Under such circumstances, when there is nothing before the court which tends to impeach the relator's oath, it should not be assumed to be false.

For these reasons I am of the opinion that the relator is entitled to a *mandamus* commanding the respondents to place his name upon the list of voters of the twenty-first election district of the first assembly district.