WILLIAM D. WILSON ET AL., Appellants, v. THE TRIUMPH CONSOLIDATED MINING COMPANY, A CORPORATION, Respondent.

Location of Mining Claim by Alien — Subsequent Transfer to Citizen — Vesting of Title. Citizenship of Domestic Corporation. Rule That Citizens Only Can Locate Mining Claims — When Question of Citizenship Can Not Arise. Mining Claim Held by Alien — When and How It May Be Relocated. What Constitutes a Sufficient Title to Justify Possession. Notice of Location — How Construed — Sufficiency of. Work on One Claim for Benefit of Group — When Question for Jury.

1. *Location of Mining Claim by Alien—Subsequent Transfer to Citizen—Vesting of Title.*

Where a mining claim is located by an alien on unappropriated government land, and all the acts necessary to a valid location are performed by him, and he and his representatives, claiming to be owners thereof, perform the work necessary to keep the claim good until it is conveyed to a citizen, and no rights of third parties have attached prior to the conveyance, as between private citizens in which the government is not interested, the conveyance vests the title in the citizen, although the original locator was an alien.

2. *Citizenship of Domestic Corporation.*

A corporation organized under the laws of Utah is a citizen of the State.

3. *Rule That Citizens Only Can Locate Mining Claims — When Question of Citizenship Can Not Arise.*

Although it is true as a general rule, that only citizens of the United States can locate mining claims, the question of citizenship can only be raised by the government, and in all actions of ejectment in a contest between individuals the question can not arise.

4. *Mining Claim Held by Alien — When and How It May Be Relocated*

A qualified locator may relocate a mining claim in the possession of an alien who has not declared his intention to become a citizen, if relocation be made without force or violence and prior to declaration of intention or conveyance to a citizen. As against an intruder, possession is prima facie evidence of right to possession, but as against one connecting himself with the government title. mere occupancy must yield to the higher right.

5. *What Constitutes Sufficient Title to Justify Possession.*

A lease and bond from an administrator under order of court and by consent of all parties interested, and an actual possession by consent of all parties, is sufficient showing of title under which to justify possession.

6. *Notice of Location — How Construed — Sufficiency Of.*

The construction given a notice of location should be liberal and not technical, and a notice which refers to a known mining claim with date of its location or to recorded claims adjoining it, with a hoisting shaft, is a sufficient compliance

with the law requiring reference to be made to some natural object or permanent monument.

7.  *Work on One Claim for Benefit of Group—When Question for Jury.*
Where the testimony tends to show the consolidation of a group of claims for development and working purposes and that the required amount of work was done on one claim for all, and that defendant's grantor was the owner of all the claims by location or assignment, the question of whether work on one would inure to the benefit of all was properly left to the jury.

(Decided March 14, 1899.)

Appeal from the Fifth Judicial District, Juab County, Hon. E. V. Higgins, *Judge.*

Action in ejectment for possession of certain mining ground.

From a judgment for defendant, plaintiffs appeal. *Affirmed.*

*John W. Pike, Esq.;* and *H. L. Pickett, Esq.,* for appellants.

Appellants insist that not only the parties to an action to recover the possession of a mining claim must each prove citizenship where they each claim to be the original locator of the mining claim in controversy, but if they are each claiming as grantee of the original locator they must in that event prove the citizenship of the locator under whom they claim. *North Noonday Co.* v. *Orient Co.,* Sawyer, 299; S. C. 9 Morrison's Mining Reports, 529, *Hammer* v. *Garfield Co.,* 132 U. S., 2-2.

*Messrs. Dey & Street* and *W. H. Bramel, Esq.,* for respondents.

Citizenship of locators (of mining claims) is not required to be proved in an action of this character.

This case does not arise on application for patent, and is one in which the government is not interested or concerned, and therefore it is not one of the class of cases where proof of citizenship is required. *Jantzen* v. *Ariz. Copper Co.*, 20 Pac., 93; *Manuel* v. *Wulff*, 152 U. S., 505; *McFeters* v. *Pierson*, 24 Pac., 1076; Lindley on Mines, Secs. 233, 234; *Billings* v. *Aspen*, 51 Fed., 338; S. C. 52 Fed. 150; *Lone Jack* v. *Megginson*, 82 Fed., 89–93–4.

The assessment work may be done outside of the claim. So long as the work tends to develop the claim in question it is immaterial where or how it is done. It may be done either within or without the limits of the claim. *Harrington* v. *Chambers*, 3 Utah, 94; *Smelting Co.* v. *Kemp*, 104 Utah, 636; *Packer* v. *Heaton*, 4 Morrison's Min. Rep., 447; *Mt. Diablo Co.* v. *Callison*, 5 Sawyer (U. S.), 439; *Chambers* v. *Harrington*, 111 U. S., 350; Lindley on Mines, Sec. 631.

MINER, J.

This action in ejectment was brought by the plaintiffs and appellants in Juab County against the defendant and respondent, to recover possession of a certain mining claim called the "Steeple Chase" by the appellants, and the "Mormon Chief" by the respondent, located in Tintic mining district, State of Utah. The appellants insist that the Steeple Chase mining claim was located January 1, 1897, by one R. C. Alexander, their grantor, upon unappropriated mineral land of the United States, subject to location in observance of all the laws of the United States, and the by-laws of the Tintic mining district, and that the appellants are the owners thereof

subject to the paramount title therein in the United States, and that while the plaintiffs and their grantors were the owners and entitled to the possession of said Steeple Chase mining claim, the defendant, on the 15th day of January, 1897, entered into possession of said claim, and unlawfully withheld the possession of said claim from the plaintiffs, to their damage, etc.

It appears that J. F. Kappes, at the time of his death, September 24, 1895, was the owner of the Mormon Chief, which covers the same ground as the Steeple Chase, located August 10, 1882, by W. W. Hinch and O. T. McMillan. The Pride of the Hills mine was located August 11, 1885, by J. F. Kappes. The Sunday mine was located January 21, 1890, by J. F. Kappes and George Kappes. The Sunday Extension was located November 29, 1890, by J. F. Kappes, and the Silver Star was located January 29, 1892, by J. F. Kappes. These five claims were lying contiguous to each other. Notice of the consolidation of these five claims for working purposes, including the Mormon Chief, was duly made and recorded, and the group consolidated on or before 1896. On November 9, 1895, Hugo Deprizen was appointed administrator of the estate of J. F. Kappes, deceased. The administrator expended five hundred dollars in assessment work on these consolidated claims in 1896, by running a tunnel in the Pride of the Hills mine, the work being completed on November 28, 1896. This work was done for development work, for the benefit of the five claims named. On December 24, 1896, Deprezin as administrator, and under an order of the Probate Court, and by consent and agreement of all the heirs and parties interested in the estate of J. F. Kappes, deceased, entered into a contract to sell, bond, and lease said five claims to Valentine Kramer, for ten

thousand dollars, of which sum $1,563.31 was paid in cash with an option to pay the balance in two years. Kramer went into possession and at work on the five claims in December, 1896, and continued at work until January 7, 1897. On January 11, 1897, Kramer assigned his contract to Kirby, and on February 12, 1897, Kirby assigned his contract to the respondent, a corporation organized under the laws of the State of Utah. From January 5, 1897, to the time of the trial, continuous work was done by the respondent and its grantors on the property. George Kappes had previously to 1896, conveyed his interest in the claims to J. F. Kappes. The respondent, in its answer, denied all the allegations of the complaint, and alleged that the plaintiff had no right, title, or interest in said claims, and is not, and never was, entitled to the possession thereof. The Steeple Chase mining claim claimed by the appellants as having been located by their grantor, January 1, 1897, is the same ground as the Mormon Chief, included in said group, and conveyed by the administrator of J. F. Kappes, by lease, bond, and sale. This is the only claim involved in this litigation. The jury returned a verdict in favor of the defendant. and the plaintiffs appeal.

After stating the facts, Miner, J.. delivered the opinion of the court.

The appellants contend that after having made a *prima facie* case, and no sufficient evidence of the location of the claims appearing, that the court erred in refusing to instruct the jury that unless it appeared to their satisfaction, from the evidence, that George Kappes and J. F. Kappes, the persons who located the Pride of the Hills, were citizens of the United States, or had declared their intention of becoming such at the time of making of the location in question, they acquired no right under Sec.

2319, Rev. Stat. of the United States, and the location made under which the respondent claims, is invalid.

The five claims had been consolidated for the purpose of doing the work for the benefit of all upon one claim. The location notice for each claim was shown in evidence by the defendant, as was also testimony tending to show that the assessment work for 1896 was done on the Pride of the Hills for the benefit of the five claims, and evidence was given tending to show, in some degree, that J. F. Kappes was a citizen at the time he located the claims, and received a conveyance thereof from George Kappes.

The authorities bearing upon the question in issue are in conflict. From a review of all of them, upon this question, we conclude that if Kappes, although not a citizen perform all the acts necessary to make a valid location of the claim, and claimed to be the owner thereof, as the proof tends to show, and that he or his administrator performed the work necessary to keep his claim good had he been a citizen, until the administrator by order of the court and by consent of the heirs conveyed the claim to the defendant or its grantors, and the defendant was a citizen of the United States when it received the conveyance, and after the conveyance to it took possession and control of the claims, and kept up the monuments and performed the necessary conditions to keep the claims good, its grantor, being a citizen, carried a good and valid right to the claims, as against the plaintiffs, from the date of the conveyance to it, and its grantors, provided no other right attached in plaintiff's favor, prior to such conveyance and the subsequent performance of the required conditions by it and its grantors. The respondent being a corporation, organized under the laws of Utah, is a citizen of the State. No question is raised concerning the citizenship

of respondent's grantors.     The defendant and its grantors
acquired the conveyance before the plaintiff located his
claim, and the title vested in the defendant, even although
the original locator was an alien.     *North Noonday Co.* v.
*The Orient Co.*, 6 Sawyer, 299; 9 Morrison Mining Re-
ports, 529; *Manuel* v. *Wulff*, 152 U. S., 505; 1 Lindley
on Mines, Secs. 232, 233, 234.

This action does not involve the right of possession of
any ground except the Mormon Chief.     This is not an
application for a patent, nor does the claim arise under
Sec. 2326, Rev. Stat. U. S.

After an examination of all the authorities, we conclude
that as a general rule it is true that only citizens of the
United States can locate mining claims; but it has been
held in the case of *Manuel* v. *Wulff*, 152 U. S., 505, that
this is a question that can only be asserted by the govern-
ment.     In a contest by individuals, as in this case, which
is an action in ejectment, that question does not arise.
When a party applies for a patent, the government is in-
terested, and in a case of that kind the citizenship of the
parties must be shown before they would be entitled to a
patent.     This not being an action for a patent, but an
action in ejectment for the possession of the Mormon
Chief, the question of citizenship does not arise and can
not be considered.     It is only for the government to
make that objection on the ground of noncitizenship.
*Billings* v. *Aspen Min. Co.*, 51 Fed., 338; *Billings* v.
*Aspen Min. Co.*, 52 Fed., 250; *Lone Jack Min. Co.* v.
*Megginson*, 82 Fed., 89; 1 Lindley on Mines, Secs. 232,
233, and 234; *Jantzen* v. *Ariz. Copper Co.*, 20 Pac., 93;
*Manuel* v. *Wulff*, 152 U. S., 505; *Croesus M. & M Co.*
v. *Colo. M. & M. Co.*, 19 Fed., 78; *Ferguson* v. *Neville*,
61 Cal., 356; *Goman Mining Co.* v. *Alexander*, 2 So.
Dak., 557; *Osterman* v. *Baldwin*, 6 Wall., 122; *Wulff* v.

*Manuel*, 9 Mont., 279; *Craig* v. *Radford*, 3 Wheat, 594.

The conclusions reached in 1 Lindley on Mines, Sec. 234, and which appear to us to be sustained by the greater weight of authority and reason in a case like this, are, first, " An alien may locate or purchase a mining claim, and until 'inquest of office' may hold and dispose of the same in like manner as a citize

" 2. Proceedings to obtain patents are in the nature of 'inquest of office,' and in such proceedings citizenship is a necessary and material fact to be alleged and proved.

" 3. In all other classes of action between individuals with which the government has no concern, citizenship is not a fact in issue; it need be neither alleged nor proved."

These rules may be subject to the limitation that a qualified locator may relocate the claim in the possession of an alien, who has not declared his intention to become a citizen, if such relocation be made without force or violence, and prior to the declaration of intention of naturalization of the alien, or conveyance of his rights to the claim to a citizen. As against a mere intruder or trespasser, or one having no higher or better right than the occupant, possession of the mineral claim is *prima facie* evidence of a right of possession whether the occupant be an alien or not. But as against one connecting himself with the government title this mere occupancy must yield to the higher right. 1 Lindley on Mines, Sec. 216, 218; *Sparks* v. *Pierce*, 115 U. S., 408; *Brandt* v. *Wheeler*, 52 Cal., 430.

We conclude that no error was committed by the court, in refusing the request.

It is also contended that the lease, bond, and contract of sale by the administrator to the defendant, was improperly admitted in evidence, and did not convey any right

of possession.   It appears that the lease and contract of sale was made by the administrator to the defendant by order of the court, and by consent of all the heirs and parties interested in the estate of J. F. Kappes, deceased, based upon a proper petition, and that the defendant was in possession thereunder by consent of all the interested parties.   This as against a stranger not claiming under or through any party in interest, as well as against a trespasser, was a sufficient showing of title under which to justify possession.   *Smith* v. *North Canyon Water Co.*, 52 Pac. (Utah), 28, 16 Utah, 194; *Carpenter* v. *Small*, 35 Cal., 346; Freeman on Judgments (3d ed.), Sec. 335; *Haws* v. *Victoria Min. Co.*, 106 U. S., 303; *Zilmer* v. *Gerichten*, 111 Cal., 73.

It is also claimed that the court erred in admitting evidence of the certificate of location of the Pride of the Hills Mine, on the ground that the location was not sufficiently tied to any natural object or permanent monument, so as to identify the claim.   The certificate recites that the claim is located on the east side of the Mormon Chief Mine, and southeast of the Elmer Ray Mine, located August 11, 1885, together with a description of its boundaries and size, measured from the stakes and discovery shaft of the claim, in the Tintic mining district.   The Mormon Chief Mine referred to, and also the Elmer Ray, were definitely known and staked.   The Mormon Chief was located about 400 feet southeast from the hoisting works of the Lock Ground mining claim on the Sunbeam lode in the same district.   No objection was made to the introduction of the location notice of the Mormon Chief.   We conclude that when a notice of location is recorded, it must contain the name or names of the locators, the date of the location, and such a description of the claim or claims located, by reference to some

natural object or permanent monument, as will identify the claim.   A reference therein to a known mining claim with date of its location, or to recorded claims adjoining it, with a hoisting shaft, is a sufficient compliance with law requiring reference to be made to some natural object or permanent monument.   When the location is made upon a barren hillside, the posting of notices at each of the four corners of the location, either by driving stakes into the ground, or building stone monuments so as to keep the stakes in place, is sufficient, if the locality is referred to by means of natural monuments, or other known locations, with date of location, so that the claim can be found and readily traced upon the ground, and it is in accordance with the legal rules and laws.   In such cases the construction given the notice should be liberal and not technical.   This construction is not in conflict with *Darger* v. *LeSieur*, 8 Utah, 160, and is in conformity with the weight of authority.   *Book* v. *Justice Min. Co.*, 58 Fed., 106; *Hammer* v. *Garfield Min. Co.*, 130 U. S., 130; 1 Lindley on Mines, 383; *Upton* v. *Larkin*, 17 Pac., 728; *Riste* v. *Moreton*, 49 Pac., 556.

We are of the opinion that the notice of location was properly admissible in evidence.

Many objections were made to the admissibility of evidence based upon the ground that the locators were not citizens.   This question, having been disposed of adversely to the appellants, requires no further consideration.

It is also contended that the group of claims, including the Steeple Chase or Mormon Chief, was one, and not held in common, and, therefore, work upon one of the group would not inure to the benefit of all.

The testimony tends to show the consolidation of these claims for development and working purposes, and that the required amount of work was performed on the Pride

of the Hills for that year, to answer the requirements of the statute, upon all the claims, and that J. F. Kappes was the owner of all the claims, by location or assignment.

The court submitted all these matters to the jury, and we are unable to discover any reversible error in such instructions. We are of the opinion that the court committed no error in refusing to grant the requests of the appellants, as requested. We have given attention to all the several assignments of error, and conclude that no reversible error was committed.

The judgment of the District Court is affirmed, with costs.

BARTCH, C. J., and BASKIN, J., concur.