JOHN STRICKLEY, HARRIET J. ANGELL AND THIRZA VILATE ANGELL, by JOSEPH F. M. ANGELL, Her Guardian ad Litem, Respondents, v. ELMER HILL, Appellant.

PROTEST AND ADVERSE SUIT—MINING CLAIM—LOCATORS—CITIZEN-SHIP—FINDING. CITIZEN—RIGHTS IN MINING GROUND—NOT AF-FECTED BY CO-LOCATOR BEING AN ALIEN. LOCATION—OF MINING GROUND—BY CITIZEN AND ALIEN JOINTLY—HOW FAR VALID—MESNE CONVEYANCE TO ALIEN DOES NOT AFFECT TITLE. ALIEN DECLARATION OF INTENTION TO BECOME CITIZEN UNDER PRO-VISIONS OF SEC. 2166, R. S. OF U. S. MAY LOCATE MINERAL LANDS UNDER SEC. 2319 R. S. OF U. S. LOST RECORD—PROOF OF—GENERAL RULE. CITIZENSHIP—IN PROTEST SUIT UNDER SEC. 2326 R. S. OF U. S. MUST BE PROVEN. EVIDENCE—SUFFI-CIENCY OF—TO SUPPORT FINDINGS. CONSENT TO BOUNDARY OF MINING GROUND—PART OWNER CANNOT BIND HIS CO-OWNER. BOUNDARY—ACQUIESCENCE IN—HOW LONG NECESSARY TO BIND ADJOINING OWNERS—RECENT PAROLE AGREEMENT—VOID UNDER STATUTE OF FRAUDS.

*Protest and Adverse Suit—Mining Claim—Locators—Citizenship—Finding.*

When it appears in a protest and adverse suit that one of two locators of a mining claim was a native born citizen; that the other although of foreign birth had resided in various states of the Union for many years; that he had served as a soldier in the volunteer army of the United States from 1863 to 1866, and had been honorably discharged therefrom; that he had exercised the right of franchise and had voted at several ter-ritorial elections, and in 1887 had taken and subscribed an oath to the effect that he was over 21 years of age, a resident of Utah, a naturalized citizen of the United States, and that he would support the Constitution thereof; that he was awarded and drew a pension from the government for dis-

22 Utah—17.

abilities received while in the military service, a finding that the first party was a citizen, and the second party a naturalized citizen, will not be disturbed.

*Citizen—Rights in Mining Ground—Not Affected by Co-Locator Being an Alien.*

The rights of a citizen locator of mining ground, and his subsequent grantees, cannot be affected by the fact that his co-locator was an alien.

*Location—Of Mining Ground—By Citizen and Alien Jointly—How far Valid—Mesne Conveyance to Alien Does Not affect Title.*

If a citizen and an alien jointly locate a claim, not exceeding the amount of ground allowed to one locator, such location is valid as to the citizen, or to one who has declared his intention to become such, and a conveyance by him, through an alien, to another citizen, conveys a complete title to the claim located, provided all other provisions of the law were complied with, and there be no intervening rights.[1]

*Alien—Declaration of Intention to Become Citizen Under Provisions of Sec. 2166 R. S. of U. S.—May Locate Mineral Lands Under Sec. 2319 R. S. of U. S.*

An alien who has declared his intention to become a citizen, by enlistment in the United States Army, under Sec. 2166 R. S. of U. S. may, under the provisions of Sec. 2319, locate mineral lands upon the unoccupied public domain.

*Lost Record—Proof of—General Rule.*

The general rule is that when a record has been lost or destroyed, or by lapse of time, or by death of the person naturalized, and the record cannot be produced, secondary evidence is admissible to prove naturalization; and proof that a party served in the army and was honorably discharged therefrom, has a strong bearing tending to show a declaration of intention to become a citizen, as well as being a strong circumstance tending to show naturalization.

*Citizenship—In Protest Suit Under Sec. 2326 R. S. of U. S.—Must be Proven.*

Citizenship which may be proved like any other fact and is a question for the court and jury to pass upon, or a declaration of intention to become such citizen, must be shown in a suit

---

[1] *Wilson* v. *Triumph Mining Co.*, 19 Utah, 66.

in aid of a patent protest and adverse claim under Sec. 2326 R. S. of U. S.

*Evidence—Sufficiency of—To Support Findings.*

When there is evidence to support findings, the weight of such evidence being within the province of the trial court, its determination thereon will not be disturbed on appeal.[1]

*Consent to Boundary of Mining Ground — Part Owner Cannot Bind His Co-Owner.*

The consent of an owner of an undivided interest in mining ground to the establishing of a certain line as a boundary, cannot bind his co-owner not consenting.

*Boundary—Acquiescence in—How Long Necessary to Bind Adjoining Owners — Recent Parol Agreement—Void Under Statute of Frauds.*

Although when adjoining owners and their predecessors in interest, occupy land to a given line, and treat such line as a boundary between their respective lots for twenty years, neither can thereafter claim beyond such line; and although a parol agreement long acquiesced in to settle a boundary between adjoining owners, being the result of an honest attempt to fix the true boundary line according to which the parties and their predecessors have actually occupied and made improvements with reference thereto, though the time has not been sufficient to establish a bar under the statute of limitations, will work an estoppel; yet a recent parol agreement between parties, fixing the boundary line between unpatented mining claims, is void under the Statute of Frauds, and under the circumstances shown could not bind the government.[2]

(Decided July 11, 1900.)

Appeal from the Third District Court Salt Lake County. Hon. Ogden Hiles, *Judge.*

Action by plaintiffs in aid of a protest and adverse claim to mining ground. From a judgment for plaintiffs defendant appealed. *Affirmed.*

*Messrs. C. F. & F. C. Loofborrow,* for appellant.

[1] *Larsen* v. *Onesite,* 21 Utah, 38; 59 Pac. 234.
[2] *Larsen* v. *Onesite, supra; McMaster* v. *Morse,* 18 Utah, 21.

"In the absence of proof that an alien has become a citizen of the United States, his original status is presumed to continue." *Hauenstein* v. *Lynham*, 100 U. S. 483.

On the question of location by an alien we cite the following authorities: *Anthony* v. *Jilson*, 83 Cal. 296; same case, 16 Morrison 27; *Lee* v. *Justice Mining Co.*, 29 Pac. 1020 (Colo.); *Golden Fleece Co.* v. *Cable Co.*, 12 Nev. 312; *Tibbetts* v. *Ah Tong*, 2 Pac. 759 (Mont.); *Wilson* v. *Triumph Mining Co.*, 56 Pac. 300 (Utah); Barringer & Adams on Mines p. 202.

The conclusions reached by this court in *Wilson* v. *Triumph Mining Co.*, 56 Pac. 300 are in exact accord with our views.

In an adverse suit plaintiffs must show everything necessary to establish a good title in themselves to the claim on account of which their protest is made, as well against the government as against the other claimants. They must recover, if at all, on the strength of their own title. *Gwillim* v. *Donnellan*, 115 U. S. 45; *Schultz* v. *Allen*, 48 Pac., 960 (Arizona).

If, therefore, the "Amazon No. 2" was a valid location and the plaintiffs have any right in it (which we do not concede) we insist that the line as surveyed between the Navajo and the Amazon group became an agreed line and the plaintiffs are estopped now to question its correctness.

Upon this point we cite the following authorities: Tyler Law of Boundaries, pp. 24, 25, 26; *McGee* v. *Stone*, 9 Cal. 600; Same case, 2d Morrison, 238; *Brown* v. *Caldwell*, 10 S. & R., 114; Same case, 12 Morrison, 674; *Vosberg* v. *Teeter*, 32 N. Y. 566; *Boyd* v. *Graves*, 4 Wheaton, 513; *Perkins* v. *Gay*, 3 S. & R., 327; *McCoy* v. *Hutchins*, 8 W. & S., 66; *Smith* v. *Hamilton*, 20

Mich. 433; *Jamison* v. *Pettit*, 6 Bush, 669 (Ky.); *Jacobs* v. *Moseley*, 91 Mo. 457.

*Messrs. Booth, Lee & Ritchie*, for respondents.

We cite the following authorities on the question of the proof of the naturalization of John J. Jackson: 6 A. & E. Enc'y of Law, 2d ed. p. 26; Lindley on Mines, Vol. 1, Sec. 227, citing, Sec. 2321 of the Revised Statutes of the United States; *O'Reilly* v. *Campbell*, 116 U. S. 418; *Hammer* v. *Garfield Mfg. Co.*, 130 U. S. 130; *North Noonday Mfg. Co.* v. *Orient Mfg. Co.*. 11 Fed. 126; *People* v. *McNally*, 59 How. Pr. (N. Y. Sup. A.) 500; see also, *Hogan* v. *Kurtz*, 94 U. S. 771; *Boyd* v. *Nebraska*, 143 U. S. 682.

The law does not require that a locator shall be a citizen. It is sufficient if he has declared his intention to become one. Sec. 2319 Rev. Stat. of U. S.

Service in and an honorable discharge from the United States regular or volunteer army is equivalent to a declaration of intention to become a citizen of the United States.

An alien twenty-one years of age who is honorably discharged after serving an enlistment in the United States army occupies the status of one who has declared his intention to become a citizen. Rev. Stat. U. S., Sec. 2661; Clark's Mineral Law Digest, p. 52, par. 64; *Smith* v. *United States*, 16 U. S. Land Dec. 352.

The line between the "Navajo" and the "Amazon Mine No. 2" was never fixed by agreement of the parties in accordance with the "Navajo" survey or by any agree-ment at all.

The agreement attempted to be proven by the appellant was an oral agreement and is within the statute of frauds.

"A parol agreement between co-terminous proprietors

of land that a surveyor should run a line between their
respective tracts, and that such a line should become the
division line, is invalid under the statute of frauds."
*Tharp* v. *Blankenship*, 67 Cal. 441; Browne Statute of
Frauds, Section 75, and cases cited; *Jackson* v. *Long*, 7
Wendell 169.

## STATEMENT OF FACTS.

It is alleged in the complaint that on the 4th day of
February, 1886, John J. Jackson and John Tiernan were
citizens of the United States, and that on that day duly
located the Amazon Mine No. 2; that the plaintiffs are
the successors in interest of said Jackson and Tiernan;
that defendant Hill claims to be the owner of the Navajo
Lode Mining Claim, and that on June 27th, 1896, said
Hill wrongfully caused said Navajo mine to be surveyed
for patent so as to overlap and include part of said Amazon
No. 2 mine; that on June 10th defendant filed his diagram
of said survey and applied for a United States patent,
wrongfully claiming possession of the Navajo lode as sur-
veyed so including two parcels of land belonging to the
Amazon No. 2 lode; that plaintiffs filed a protest to said
application and adverse claim, and prays that plaintiffs be
adjudged to be entitled to the possession of said two par-
cels of land so included in the defendant's survey, and
alleged to be in conflict, and asks that title be quieted
thereto.

Defendant's answer admits the survey, but denies the
other allegations in the complaint. Defendant alleges
that Tiernan did not locate the Amazon No. 2, but that
John J. Jackson and Frank Selby attempted to make said
location but that both of them were aliens at the time and
ever since have been; that Tiernan never had any inter-
est therein, but that his name was used by Selby for the

purpose of making the location for him in circumvention of the laws of the United States and that said location was fraudulent and void; that the Navajo was located on the 23d day of July, 1891, and ever since has been in his possession, and that he is entitled to receive a patent therefor; that the boundary line between the Navajo and the Amazon No. 2 has never been definitely located, and the true line has been in dispute; that upon notice and request of the defendant, William Strickley, said plaintiff, and John J. Jackson met upon the ground and placed the boundaries thereof by agreement and consent; that the application for patent is based upon said agreed lines; that the location of. the Amazon No. 2 is void, because the same was not located on unoccupied mineral ground of the United States, and that the plaintiffs have attempted to change the boundaries of the Amazon No. 2.

It appears that the Amazon No. 2, was located July 17, 1886, by John Tiernan and John J. Jackson, each locating an undivided one-half of the claim. In 1887, Tiernan conveyed his interest therein to Frank Selby, who was not then a citizen of the United States. This location was made by Tiernan for Selby's benefit. Selby, in 1892, conveyed his interest, then being two-thirds of the ground, to the plaintiff John Strickley, who was a citizen. Jackson continued to own and occupied the remaining one-third interest in the mine, under his location, until his death, May 20, 1897. Harriet J. Angell and Thirza Vilate Angell, by her guardian *ad litem*, plaintiffs are the only heirs of Jackson, deceased. Both Jackson and Selby served in the United States army, in 1863 and 1864, and were honorably discharged. Jackson was thereafter awarded a United States pension. The Amazon was located May 20, 1882, by Jackson. This location lapsed, and the Amazon No. 2 was located, as

stated, upon about the same ground, with some variations. Proceedings to obtain patent to the Navajo were commenced June 7, 1897. The protest was filed August 3, 1897.

Upon the trial the court found the facts in favor of the plaintiffs and rendered judgment accordingly. From this judgment the defendant appeals.

After stating the facts, MINER, J., delivered the opinion of the court.

The appellant contends, first, that the location of the Amazon No. 2 was void because made by aliens. That under Sec. 2319 Rev. Statutes of the United States, a location could only be made by a citizen of the United States, or those who had declared their intention to become such. Second, that the Amazon No. 2 was not originally located upon unoccupied mineral lands of the United States as now claimed. Third, that the lines between these properties were fixed by agreement of the parties in accordance with the new survey as now claimed, and should not be disturbed.

1. As to the first contention of the appellant it appears that Tiernan, one of the locators of the Amazon No. 2, was a native born citizen of the United States and qualified to make the location; that he and Jackson located the Amazon No. 2 on February 17, 1882. Jackson, the other locator, was reported to have been born in Scotland, but had lived in the United States for many years in the states of California, Montana and Utah. He was about 63 years old at the time of the location, and was about 75 years old when he died in 1897. Prior to 1886 he had exercised the right of franchise, and voted at the territorial elections five or six different times. After his death his naturalization papers were not found among his effects.

He had resided near the claim in question at Bingham for several years and worked the claim.

The registrar of election testified that Jackson subscribed and swore to a registration oath then required to be taken by each elector before voting; that such affidavit was taken before him at Bingham on June 4, 1887. That oath was produced from the office of the county clerk, where it was on file, and it was found to have been filed August 3, 1887, and was introduced in evidence. It appears from the oath that Jackson testified that he was over 21 years old, a resident of the Territory of Utah for more than six months; that he was a naturalized citizen of the United States, 63 years of age, and that he would support the constitution of the United States, etc. It also appears from the testimony and from his discharge papers, in evidence, that he was a soldier in the war of the rebellion, and was enrolled in Company B. First Batalion Nevada Cavalry, August 5, 1863, for three years, or during the war, and was honorably discharged from the service of the United States on the 21st day of July, 1866. Thereafter he was awarded and drew a pension from the United States government on account of disability and injuries received, his feet having been frozen, and three toes having been amputated. The trial court found that Tiernan was a citizen; that Jackson became, by due process of naturalization according to law at some time prior to June 4; 1887, a citizen of the United States, and continued a citizen until his death in March, 1897.

We are of the opinion that there was evidence to sustain the findings. Tiernan was unquestionably a citizen at the time of the location. His rights, nor those of his grantees, would not be affected by the fact that his co-locator was not a citizen. If a citizen and an alien jointly locate a claim, not exceeding the amount of ground

allowed to one locator, such location is valid as to the citizen, or to one who has declared his intention to become such, and a conveyance by him through an alien to another citizen, conveys a complete title to the claim located provided all other provisions of the law were complied wlth, and there be no intervening rights. *North Noonday M. Co.* v. *Orient M. Co.*, 1 Fed. Rep. 522; 1 Lindley on Mines, Sec. 234; *Manuel* v. *Wulff*, 152 U. S. 505; *Wilson Triumph Min. Co.* 19 Utah, 66.

So the fact that the Amazon No. 2 was located by Tiernan, a citizen, and by Jackson in 1886, before any other location was made, and the claim contained no more than one citizen was authorized to locate, the location of the claim as to Tiernan is good, even though Jackson was an alien and not entitled to locate it. *North Noonday M. C.* v. *Orient M. Co.*, 1 Fed. Rep. 522; *Wilson* v. *Triumph Min. Co.*, 19 Utah, 66.

Selby, though an alien, and not having declared his intention to become a citizen of the United States, having received conveyance of an unpatented mining claim from a citizen who located it, could acquire by deed and hold the title the locators of such claim acquired under Sec. 2319, and convey the same before office found, which would not occur until on or after the proceedings were commenced to obtain a patent to conflicting lands claimed by the Navajo June 9, 1897, and protest proceedings were filed, and title to the Navajo asserted.

In *Phillips* v. *Moore*, 100 U. S. 212, it is said: "By the common law, an alien cannot acquire real property by operation of law, but may take it by act of the grantor, and hold it until office found; that is, until the fact of alienation is authoritatively established by a public officer, upon an inquest held at the instance of the government. The proceeding which contains the finding of the fact

upon the inquest of the officer is technically designated in the books of law as ' office found.' It removes the fact, upon the existence of which the law divests the estate and transfers it to the government, from the region of uncertainty, and makes it a matter of record. It was devised, according to the old law-writers, as an authentic means to give the king his right by solemn matter of record, without which he in general could neither take nor part with any thing; for it was deemed "a part of the liberties of England, and greatly for the safety of the subject, that the king may not enter upon or seize any man's possessions upon bare surmises, without the intervention of a jury.' " *Ferguson* v. *Neville*, 61 Cal. 258; 1 Lindley on Mines, Sec. 233; *Manuel* v. *Wulff*, 152 U. S. 505, 511; *North Noon Day* v. *Orient M. Co.*, 6 Sawyer, 300.

But the respondents claim that because Jackson was an honorably discharged soldier of the United States no proof of declaration of intention was necessary.

By Sec. 2319 Rev. Stat. U. S., mineral lands of the United States are subject to location by citizens thereof, or those who have declared their intention to become such.

Sec. 2166 R. S. U. S. provides that "Any alien, of the age of twenty-one years and upwards, who has enlisted, or may enlist, in the armies of the United States, either the regular or volunteer forces, and has been, or may be hereafter, honorably discharged, shall be admitted to become a citizen of the United States, upon his petition, without any previous declaration of his intention to become such." * * *

Both Jackson and Selby were shown to have been soldiers and honorably discharged from the army of the United States.

In *Smith* v. *United States*, 16 U. S. Land Decisions,

352, it is held by the general land office at Washington, and such rule has been followed in that department, that an alien 21 years of age who is honorably discharged after serving an enlistment in the United States army occupies the status of one who has declared his intention to become a citizen under Sec. 2166 R. S. under the homestead law.

In 2 Land Decisions, p. 195, the same rule is laid down, and it is held that service in the United States Army, as required by the statute, is equivalent to a declaration of intention to become a citizen, and this rule was approved by the Secretary of the Interior.

These decisions had reference to homestead entries, but the statutory requirements as to citizenship are the same under Sec. 2289 applying to homesteads, as is Sec. 2319 as to mineral land. This rule has never been questioned in the depertment, and has not been overthrown so far as we are able to discover.

In *Manuel* v. *Wulff*, 152 U. S. 511, and in *Iron S. Mng. Co.* v. *Elgin, M. & S. Co.*, 118 U. S. 207, the Supreme Court refer to certain rulings of the department approvingly, and say that to overturn them would seriously affect titles.

While we cannot give the weight to these decisions of the department that the respondents claim for them, yet the fact that Jackson served in the army of his country and was honorably discharged therefrom, has a strong bearing tending to show a declaration of intention to become a citizen, as well as a strong circumstance tending to show naturalization, and in connection with other facts and circumstances may be sufficient to establish the fact itself.

The general rule is that where a record has been lost or destroyed, or by lapse of time, or by death of the person naturalized, and the record cannot be produced, secondary

evidence is admissible to prove naturalization.   6 Am. &
Eng. Ency. of Law, 26.

Citizenship may be proved like any other fact, and is a
question for the court and jury to pass upon.

Sec. 2321 R. S. of U. S. provides that proof of citizen-
ship may consist, in the case of an individual locator, of
his own affidavit, but in contests like this, where the case
is brought under Sec. 2326 R. S., in a contest for a patent,
proof of citizenship or the declaration to become such is
required.   1 Lindley on Mines, 226; *North Noonday M.
Co.* v. *Orient M. Co.*, 6 Sawyer, 300.

The evidence tends to show that Jackson had a long
residence in the United States, and spent many years near
the mine in question.   His death increased the difficulties
of securing proof of his naturalization, even if it was
obtained.   He had exercised the right of citizenship and
voted at many elections prior to the entry of the claim in
1886, and had previously resided in California and Mon-
tana.

Among the records of the county clerk required by law
to be kept was his affidavit made and regularly filed in
1887, wherein he testified that he was a naturalized citizen
of proper age.   The handwriting to the affidavit is shown
to be Jackson's writing, and he is shown to be the same
man who located the claim.   He died in 1897, ten years
after the affidavit was made and filed and became a record
in the clerk's office.   He assumed to be the owner of the
mine, and was dealt with as such owner, and the defend-
ant recogized him as part owner of the Amazon No. 2,
when the survey was made in 1896.   He had previously,
in 1863, enlisted as a soldier in the defense of his country,
was honorably discharged after two years service, and
drew a pension on account of disability and injuries con-
tracted in the United States service.   Having resided in

three different states where his naturalization papers could have been obtained, and the time when obtained, if at all, being very remote, the difficulties in the way of obtaining primary evidence was increased.

The trial court heard all the testimony and saw the witnesses' and found, as it had a right to find, that Jackson was a citizen of the United States because of his naturalization according to law at some time prior to June 4, 1887, and continued such until his death in 1897.

There was evidence before the court to support the findings. The question of its weight was within the province of the trial court to determine, and we are not satisfied that its determination is not correct. *Boyd* v. *Nebraska*, 143 U. S. 135; *Hogan* v. *Kurtz*, 94 U. S. 773; *Blight's Lessees* v. *Rochester*, 20 U. S. 534; *O'Donnell* v. *McNally*, 59 How. Pr. 500; *North Noon Day M. Co.* v. *Orient M. Co.*, 11 Fed. 126; *Manuel* v. *Wulff*, 152 U. S. 505; 1 Lindley on Mines, Sec. 227; *North Noon Day M. Co.* v. *Orient M. Co.*, 6 Sawyer, 300.

2. The appellant also contends that the Amazon No. 2 was not originally located upon all the ground now claimed by the plaintiffs. Each of the parties claim that the other has shifted its boundaries. A large amount of testimony was introduced to sustain these contentions, on the part of the appellant, while the respondents also introduced much testimony to show that the ground was the same as first located, and that the Amazon No. 1 had been abandoned by Jackson the locator prior to the location of the Amazon No. 2, over substantially the same ground.

The testimony was extremely contradictory and conflicting, and the court found the issues in favor of the respondents. We do not deem it necessary to review in detail all the mass of contradictory testimony taken upon

that subject. From a careful review of it we are satisfied that the court gave proper weight to it, and we do not feel called upon to disturb its. decision in this respect. *Larson* v. *Onesite*, 59 Pac. Rep. 234, 21 Utah, 38.

3. Appellant also contends that the line between the Amazon No. 2 and the Navajo mine was fixed by agreement of the parties in accordance with the Navajo survey, and that such line so fixed should not be disturbed.

The testimony tends to show that William J. Strickley, son of John Strickley, and Jackson were, by request, present a part of the time when a survey was being made of the Navajo for a patent. William J. Strickley states that he did not appear by request or authority of his father, the plaintiff, but that he was looking after the land and his father's interest, and made no objection to placing the posts and stakes on the northeast and southeast corners of the claim as they were set by the surveyor; but he also testifies, and it appears from other testimony that Jackson did object to the line as was then attempted to be fixed by appellant's surveyor, and objected to the placing of the corner posts and stakes as they were placed between the claims, and was never satisfied with the line.

The testimony concerning the agreed boundary was objected to as being within the statute of frauds, and because parties cannot establish a corner as against the government by consent of the locators. The objection was sustained, but the testimony admitted for the purpose of showing that if respondents made statements in derogation of the location they now claim it was admissible, but that the location would control notwithstanding their statements.

While the testimony is conflicting and contradictory we are not satisfied that any agreement was made concerning the line. The testimony does not show that Jackson ever

consented to fixing the line or in placing the posts and stakes where the surveyor for the appellant placed them. Whether John Strickley so consented is not important. Jackson and Strickley each owned an undivided interest in the claim. Therefore Strickley's consent to the boundary line would not bind Jackson, who did not consent. The parol agreement between the parties, if made as contended for by the appellant so recently as 1896, is invalid under the statute of frauds. It is extremely doubtful if the goveenment could be bound by such agreement in a case of this character. *Sharp* v. *Blankenship*, 67 Cal. 441; Browne on Statute of Frauds, Sec. 75; *Vosburgh* v. *Tealor*, 32 N. Y. 561; *Jackson* v. *Long*, 7 Wend. 170.

But as held in *Larson* v. *Onesite*, 21 Utah, 38, 59 Pac. Rep. 234, and *McMaster* v. *Morse*, 18 Utah, 21, where adjoining owners and their predecessors in interest occupy land to a given line, and treat such line as a boundary between their respective lots for 20 years, neither can thereafter claim beyond such line.

In Michigan it is held that unless an attempt to settle a doubtful boundary is honestly made, without mistake or fraud, and in view of a question of the true boundary, the statute of frauds will prevent mere acquiescense in the boundary from operating as an estoppel. *Cronin* v. *Gore*, 38 Mich. 381.

It is also held that a parol agreement long acquiesced in to settle a boundary between adjoining owners, being the result of an honest attempt to fix the true boundary line according to which the parties and their predecessors have actually occupied and made improvements with reference thereto, although the time has not been sufficient to establish a bar under the statute of limitations, will work an estoppel. *Smith* v. *Hamilton*, 20 Mich. 433; *Joyce* v. *Williams*, 26 Mich. 332; *Dupont* v. *Starring, et al.*, 42 Mich. 492.

The facts in this case do not bring it within either of the rules referred to.

After a careful review of the case we find no reversible error in the record.

The judgment of the district court is affirmed, with costs.

BARTCH, C. J. and BASKIN, J. concur.