**Fred N. HOBSON et ux., Plaintiffs and Respondents,**

v.

**PANGUITCH LAKE CORPORATION, a Utah Corporation, and Oliver LeFevre, Defendants, Third-Party Plaintiffs and Appellant,**

v.

**Derral CHRISTENSEN et ux., et al., Third-Party Defendants, Fourth-Party Plaintiffs and Respondents,**

v.

**Della D. MARSDEN et al., Fourth-Party Defendants and Respondents.**

**No. 13615.**

Supreme Court of Utah.

Jan. 3, 1975.

---

1. Rule 65B(i), adopted by the Utah Supreme Court effective August 20, 1969.

J. Anthony Eyre of Kipp & Christian, Salt Lake City, for Panguitch Lake Corp.

Ken Chamberlain of Olsen & Chamberlain, Richfield, for Hobson.

Thorpe Waddingham, Delta, for Christensen.

Paul M. Hansen, Ogden, for Marsden.

CROCKETT, Justice:

Under a claim that a boundary was established by an oral agreement according to an existing fence line plaintiffs Fred N. and Mary L. Hobson assert ownership of a strip of mountain land in Garfield County, overlapping a tract as described in conveyances to the defendant Panguitch Lake Corporation. The diagram below shows the properties with the disputed strip in cross-hatching.

Section 31, Township 35 South, Range 7 West

Prior to 1957 the 40-acre tracts (quarter quarter sections) 1, 2 and 3 were owned by William Marsden and Della D. Marsden. On November 1, 1957, William Marsden by warranty deed conveyed tract 3, which includes the disputed parcel, to his wife Della, who is also named as a party defendant. A year later, on September 2, 1958, Mrs. Marsden sold tract 1 to the plantiffs Hobsons and conveyed by warranty deed which described it as the Northeast Quarter of the Southwest Quarter of Section 31, etc.

In August, 1958, prior to the conveyance just described, Fred Hobson had met with William Marsden, who, by use of a hand-held compass, purported to locate the west

boundary line of tract 1; and stakes were driven along the line as so designated. A fence was constructed by Hobson along that line in 1958 (which later proved to be off-direction as shown in the diagram).[1] Six years later, in 1964, Mrs. Marsden conveyed the 40 acres (quarter quarter section) to the west of Hobsons, designated on the diagram as tract 3, to other parties, Derral Christensen, et al., who a year later, on September 15, 1965, conveyed to defendant Panguitch Lake Corporation. Two and a half years later the defendant had a survey made and thereafter removed the fence built by Hobson. Failure of discussions to produce an agreement resulted in this lawsuit.

Plaintiffs argue that on the basis of the conversations between Mr. Hobson and plaintiffs' predecessor, William Marsden, and the construction of the fence in conformity with their marking it with stakes, combined with the existence of the fence for approximately ten years, constituted a boundary by agreement. In support of this contention they have quoted from the case of Brown v. Milliner [2] this language:

> A review of the Utah cases involving boundary disputes reveals that it has long been recognized in this state that *when the location of the true boundary* between two adjoining tracts of land is *unknown, uncertain or in dispute, the owners thereof may, by parol agreement, establish the boundary* line and thereby irrevocably bind themselves and their grantees. (Emphasis added.)

The difficulty with the plaintiffs' argument is that it ignores the additional and critical fact in the Brown case: that there had been acquiescence in the boundary for a period of more than sixty years.

■ It should be clearly understood that our case law does not support, and that we do not agree with the proposition that a landowner can claim boundary solely on the basis of an oral agreement.[3] From a reading of the cases it will be seen that it requires the acceptance, or the giving of consent or approval, by words or conduct, over some substantial period of time and when certain requisites are met.[4] This is true because it must be appreciated that recognition of such boundaries does have the effect of transferring ownership of disputed strips of property without compliance with the statute of frauds;[5] and it may be at variance with recorded conveyances.

■ The very reason for being of the doctrine of boundary by acquiescence or agreement is that in the interest of preserving the peace and good order of society the quietly resting bones of the past, which no one seems to have been troubled or complained about for a long period of years, should not be unearthed for the purpose of stirring up controversy, but should be left in their repose. Arising out of this reason for being, an indispensable requirement for application of the doctrine is the existence of the boundary for a long period of time, which the actual decisions in all of our cases on the subject affirm.[6]

---

1. The mis-direction of the property line as shown in the diagram may be explainable as a failure to allow for the variance between north as shown by a magnetic compass and true geographic north.

2. 120 Utah 16, 232 P.2d 202; and other authorities are also cited, e. g., Blanchard v. Smith, 123 Utah 119, 225 P.2d 729; Davis v. Riley, 20 Utah 2d 325, 437 P.2d 453; but it will be found that the requirement of a long period of time to establish the boundary is present.

3. Strickley v. Hill, 22 Utah 257, 62 P. 893.

4. See Fuoco v. Williams, 15 Utah 2d 156, 389 P.2d 143; also Johnson v. Sessions, 25 Utah 2d 133, 477 P.2d 788.

5. We say this in awareness that sometimes the fiction has been indulged that "if the location of the true boundary is not known to the adjoining owners, a parol agreement between them is *not regarded as transferring an interest in land* but merely determining the location of existing estates." (Emphasis added). Brown v. Milliner, footnote 2 above, citing Tripp v. Bagley, 74 Utah 57, 276 P. 912.

6. See, e. g., Rydalch v. Anderson, 37 Utah 99, 107 P. 25; Baum v. Defa, Utah, 525 P.2d 725; and cf. 3 Utah L.Rev. 504, and authorities cited therein.

■ The question as to just what length of time is required has been discussed a number of times. Particularly in the case of King v. Fronk.[7] Justice Henriod, speaking for the court, pointed out that the statutory period of seven years for establishing ownership by adverse possession [8] mandates the common law requisites of open, notorious, continuous and adverse possession, and also requires that the property be fenced or inclosed and that taxes be paid thereon. But, there are no such requisites for establishing boundary by acquiescence. It was therein pointed out that there is no exact time requirement; and that it may depend upon the circumstances of the particular case. But the opinion reaffirms the view that there must be some substantial long period of time and states that it is generally related to the common law prescriptive period of 20 years; and only under unusual circumstances would a lesser period be deemed sufficient.

■ Looking at the facts of this case in the light of the above, although there appears to have been some movement toward recreational development and subdividing, this is mountain ground in a remote area. We cannot see the circumstances as justifying a conclusion that the parties acquiesced in regarding this fence as a boundary for the sufficiently long period of time, nor that any greater injustice will result from rectifying the error and establishing the boundary in accordance with the true survey line as described in the deeds, than would result from depriving the defendants of the property conveyed to them.[9]

There is an additional problem in this case relating to the conversation in which it is claimed that the erroneous boundary was designated and agreed upon. It was not between the owners in possession, but between Mr. Hobson and Mr. William Marsden who had divested himself of title before this occurrence. Inasmuch as we have disposed of the controversy on the basis of our discussion above, there is no useful purpose to be served in concerning ourselves with whether whatever Mr. Marsden said would have been binding on his grantee, his wife and her successors.

On the basis of our discussion herein it is our conclusion that the judgment must be reversed. Costs to defendant (appellant).

CALLISTER, C. J., and HENRIOD, ELLETT and TUCKETT, JJ., concur.

---

7. 14 Utah 2d 135, 378 P.2d 893.

8. See Sections 78–12–11, 12, 12.1, U.C.A. 1953, as amended.

9. A case which is comparable and persuasive is that of Briem v. Smith, 100 Utah 213, 112 P.2d 145, wherein a period of ten years was rejected as being sufficient to so establish a boundary.