The BOARD OF GOVERNORS OF the UNIVERSITY OF NORTH CAROLINA, The University of North Carolina at Asheville, and The North Carolina School of the Arts, Plaintiffs,

v.

The UNITED STATES DEPARTMENT OF LABOR, The Honorable Elizabeth Dole, Secretary of the United States Department of Labor, and the United States, Defendants.

No. 89–242–CIV–5–BR.

United States District Court, E.D. North Carolina, Raleigh Division.

Sept. 14, 1989.

---

Thomas J. Ziko, Asst. Atty. Gen., Edwin M. Speas, Jr., Sp. Deputy Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., for plaintiffs.

Margaret Person Currin, U.S. Atty., E.D. N.C., Raleigh, N.C., Kathrine A. Baldwin,

U.S. Dept. of Justice, Employment Litigation Section CRT Div., Washington, D.C., Jerome Davis, U.S. Dept. of Labor, Washington, D.C., for defendants.

## MEMORANDUM OPINION

BRITT, Chief Judge.

The Board of Governors of the University of North Carolina (UNC) and two of its constituent institutions instituted this action on 30 March 1989 against the United States Department of Labor. Plaintiffs seek relief from an order of the Secretary of Labor which could cancel all federal contracts and subcontracts which the University and all of its constituent institutions now have[1] and prohibit the University from entering any further contracts. On 27 April 1989 the court granted plaintiffs' request for a temporary restraining order. Since the facts were not in dispute, the court ordered, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, the trial advanced and consolidated with plaintiffs' request for a preliminary injunction. The parties agreed on an expedited briefing schedule and a hearing was held on 26 June 1989. The court finds that the decision of the Secretary is contrary to law and will grant the injunctive relief sought.

## I

The Secretary of Labor (the Secretary) is responsible for the enforcement of three equal employment opportunity laws applicable to federal contractors, Executive Order 11246 (Executive Order), Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793 (Rehab Act), and the Vietnam Era Veterans' Readjustment Assistance Act, 38 U.S.C. § 2012 (VEVRAA).[2]

A. *Executive Order.* This order provides, in part:

Except in contracts exempted in accordance with ... this Order, all Government contracting agencies shall include in every Government contract hereafter entered into the following provisions:

"During the performance of this contract, the contractor agrees as follows:

"(1) The contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin."

§ 202.[3] Thus, every contractor must, as a condition of doing business with the Federal Government, agree not to discriminate. Further provisions of the Order require contractors to take affirmative action to promote the employment of individuals protected under it. § 202(1). Contractors must also expressly agree to "comply with all ... of the rules, regulations, and relevant orders of the Secretary of Labor," to "furnish all information and reports required ..." and to "permit access to [their] books, records, and accounts ... for purposes of investigation to ascertain compliance." § 202(4)–(5). Failure to comply may result in the cancellation of contracts and debarment from further contracts. § 202(6).[4]

B. *Rehab Act.* Section 503 of this Act provides, in part:

Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract, the party contracting with the United States shall take affirmative action to employ and advance in employment qualified individuals with handicaps....

29 U.S.C. § 793(a) (Supp.1989).

C. *VEVRAA.* The pertinent provision of this Act provides as follows:

---

1. As of 1 March 1989, 277 such contracts were held, having a total value in excess of $48 million.

2. Sometimes hereafter this executive order and two statutes will be referred to collectively as "the contract compliance laws."

3. The Order gives the Secretary authority to "adopt such rules and regulations and issue such orders as are deemed necessary and appropriate" to effectuate the Order. § 201.

4. The regulations implementing VEVRAA and the Rehab Act have similar provisions. *See* 41 C.F.R. §§ 60–250.4, 60–250.53, 60–741.4 and 60–741.53.

Any contract in the amount of $10,000 or more entered into by any department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States, shall contain a provision requiring that the party contracting with the United States shall take affirmative action to employ and advance in employment qualified special disabled veterans and veterans of the Vietnam era.

38 U.S.C. § 2012(a).

A division of the Department of Labor known as the Office of Federal Contract Compliance Programs (OFCCP) enforces the contract compliance laws. It checks on compliance by periodically reviewing the facilities of the contractor. 41 C.F.R. § 60–1.20. At the beginning of a compliance review, OFCCP typically requests the contractor to submit for review the affirmative action program (AAP) for the selected facility, after which an on-site review of the facility is conducted.

OFCCP filed an administrative complaint against UNC in July 1984, alleging that one of the constituent institutions, the North Carolina School for the Arts (NCSA), had submitted a deficient AAP; that another constituent institution, the University of North Carolina at Asheville (UNC–A), had failed to submit an AAP; and that UNC had refused OFCCP access to either campus to conduct on-site reviews. On 12 December 1986, an Administrative Law Judge (ALJ) entered an order restraining UNC, NCSA and UNC–A from violating the contract compliance laws and recommended that, upon their failure to comply with the order, all federal contracts with UNC and its constituent institutions be terminated. The order also recommended that UNC and its constituent institutions be prohibited from entering into any other federal contracts until they are in compliance with the contract compliance laws. UNC filed ex-

ceptions to the ALJ's rulings with the Secretary who, on 23 January 1989, issued a Decision and Final Administrative Order directing the cancellation of all existing government contracts and debarment from future contracts unless UNC complied with the terms of the Order and the contract compliance laws within ninety days. The Secretary denied a subsequent request for a stay by Order dated 25 April 1989.

## II

UNC is composed of sixteen constituent institutions.[5] N.C.Gen.Stat. § 116–4. The entire system is ruled by a Board of Governors which also controls, supervises and manages the affairs of the constituent institutions. N.C.Gen.Stat. § 116–11(2). The administrative head of UNC is the President who reports to the Board of Governors. N.C.Gen.Stat. §§ 116–14. Each constituent institution has as administrative head, the Chancellor, and a Board of Trustees which has those powers and duties delegated to it by the Board of Governors. N.C.Gen.Stat. §§ 116–33 & 116–34.

By statute "[t]he Board of Governors of the University of North Carolina shall be known and distinguished by the name of 'the University of North Carolina' and shall continue as a body politic and corporate...." N.C.Gen.Stat. § 116–3. Broad corporate powers have been given to the Board of Governors. *Id.* Any part of the Board of Governors' authority over the affairs of the constituent institutions may be delegated to the respective Board of Trustees or, through the President, to the Chancellor of the institution. N.C.Gen.Stat. § 116–11(13).

## III

Plaintiffs contend, and defendants do not deny, that, as expressly permitted by statute, the Board of Governors and the President of UNC have delegated to the constit-

---

5. Appalachian State University, East Carolina University, Elizabeth City State University, Fayetteville State University, North Carolina Agricultural and Technical State University, North Carolina Central University, North Carolina School of the Arts, North Carolina State University at Raleigh, Pembroke State University, the University of North Carolina at Asheville, the University of North Carolina at Chapel Hill, the University of North Carolina at Charlotte, the University of North Carolina at Greensboro, the University of North Carolina at Wilmington, Western Carolina University and Winston–Salem State University.

uent institutions the power to enter into contracts without prior approval of either the Board of Governors or the President.

On 27 August 1985, the parties stipulated to the accuracy of a computer printout of all federal contracts held by "institutions within the University of North Carolina" from 1 March 1981 to June 1985. This printout, a part of the administrative record, lists 521 contracts totalling $56,153,343, divided among eleven institutions.[6] Five constituent institutions are listed as having no contracts.[7] Listed separately, but showing no contracts, is "UNC–GENERAL ADMIN." [8]

## IV

A. *Plaintiffs.* In support of their contention that the Secretary's decision is erroneous, plaintiffs advance several arguments:

(1) The Tenth Amendment prohibits federal agencies from imposing contract conditions on the states that are not precisely and unambiguously stated in legislation or properly adopted regulations;

(2) The Acts at issue in this case do not apply to the states;

(3) Only Congress may determine the extent to which units of state government are subject to the Acts at issue;

(4) The Secretary's decision exceeded her authority; and

(5) The Secretary's decision is arbitrary and capricious.

B. *Defendants.* In addition to offering arguments in rebuttal to plaintiffs' contentions, defendants contend that the Secretary has acted within the scope of her authority and that her decision is rational.

## V

A. *Standard of Review.* Section 706 of the Administrative Procedure Act, 5 U.S.C.

§ 706, governs this court's action. The Supreme Court has said that the action of a federal agency may be set aside only if it is " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971), *quoting* 5 U.S.C. § 706(2)(A). *Accord National Wildlife Federation v. Hanson,* 623 F.Supp. 1539 (E.D.N.C.1985).

The decision of the Secretary is entitled to a presumption of regularity. *Overton Park,* 401 U.S. at 415, 91 S.Ct. at 823. "Where an agency is entrusted with the authority to enforce a statute, its construction of the controlling statute must be upheld if it is sufficiently reasonable; the reviewing court must not substitute its judgment for that of the agency." *Trawick v. Drug Enforcement Administration,* 861 F.2d 72, 75 (4th Cir.1988).

B. Relying on *South Dakota v. Dole,* 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987), and *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), plaintiffs contend that Congress has failed to unambiguously set forth its intention to condition the receipt of federal funds on compliance with the statutes and regulations at issue. Plaintiffs are mistaken. Unlike *Pennhurst,* the language at issue here leaves no doubt that the right to enter contracts with the government is conditioned on the contracting party agreeing to the non-discrimination provisions. Equally important, the provisions at issue here were not adopted solely under the spending power of the Constitution, a necessary assumption in plaintiffs' contention. Section 503 is a part of the Rehabilitation

---

**6.** N.C. A & T State University 56; Appalachian State University 2; East Carolina University 29; N.C. Central University 8; Pembroke State University 1; N.C. State University 176; UNC Chapel Hill 191; UNC Charlotte, 11; UNC Greensboro 4; Western Carolina University 31; and UNC Wilmington 12.

**7.** UNC Asheville, Elizabeth City State University, Fayetteville State University, Winston–Salem State University and N.C. School of the Arts.

**8.** Although not specified in the statute creating the university system, the office of President and the President's staff is known throughout the state as the "general administration."

Act which the Supreme Court has previously acknowledged was passed pursuant to § 5 of the Fourteenth Amendment. *Welch v. Texas Department of Highways and Public Transportation,* 483 U.S. 468, 472 n. 2, 107 S.Ct. 2941, 2945 n. 2, 97 L.Ed.2d 389 (1987).

■ In like manner, the affirmative action provision of VEVRAA, as amended, 38 U.S.C. § 2012, derives its constitutional authority from the power of Congress to engage in war. *Peel v. Florida Department of Transportation,* 600 F.2d 1070 (5th Cir. 1979), cited with approval in *United States v. Onslow County Board of Education,* 728 F.2d 628, 639 (4th Cir.1984). Tenth Amendment limitations are inapplicable to legislation adopted pursuant to the war power. *Onslow County,* 728 F.2d at 641.

■ C. Plaintiffs contend that the contract compliance laws do not apply to the states. The underlying rationale of this argument is the same as that set forth in B, above, i.e., that it is not plainly and unambiguously stated that application extends to the states. Plaintiffs rely on *Richard Anderson Photography v. Brown,* 852 F.2d 114 (4th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1171, 103 L.Ed.2d 229 (1989), which they contend held that the term "persons" as used in the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.,* was not intended to include "states" within its meaning.[9] Thus, plaintiffs contend, since Congress and the President did not specifically define "the contracting party" and "contractor" to include "states" the agency charged with enforcing the laws may not constitutionally do so. A similar argument was rejected by the Supreme Court in *California v. Taylor,* 353 U.S. 553, 77 S.Ct. 1037, 1 L.Ed.2d 1034 (1957). The Court held there that the language "any" in the Railway Labor Act

preceding "carrier by railroad" was broad enough to encompass a state-owned railroad. The Court considered it significant that Congress had not specifically exempted the states as it had done in other laws. *Id.* at 564–65, 77 S.Ct. at 1043–44. *See also, Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985),[10] and *United States v. California,* 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567 (1936).

D. Plaintiffs next contend that Congress has improperly delegated to the Secretary of Labor "the extent to which Section 503 and Section 402 will intrude upon traditional areas of State authority and responsibility." This argument is based on *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), and, in particular, the following statement therefrom:

> [T]he principal and basic [Tenth Amendment] limit on the federal commerce power is that inherent in all congressional action—the built-in restraints that our system provides through state participation in federal governmental action.

*Id.* at 556, 105 S.Ct. at 1020.

Relying on three law review articles,[11] plaintiffs contend that the Tenth Amendment affords procedural protection to the states that requires Congress to determine whether legislation will intrude upon "traditional areas of State authority and responsibility" and, if so, also to determine the extent to which such intrusion is appropriate. As indicated, plaintiffs also contend that this duty is non-delegable.

Plaintiffs misread *Garcia.* Rather than holding that states may avoid compliance with federal laws where the process of enactment did not adequately protect their rights, the Court held that the states are

**9.** This decision construed the term "anyone" in 17 U.S.C. § 501(a) rather than the term "persons." The word construed has no effect on plaintiffs' contention.

**10.** The specific holdings of *Atascadero State Hospital* and *Garcia,* cited below, have been overruled by subsequent legislation. 42 U.S.C.A. § 2000d–7 (West Supp.). However, the analysis relied upon is unchanged.

**11.** Baird, *State Empowerment Since Garcia,* 18 Urb.Law 491 (1986); Odom, *The Tenth Amendment After Garcia: Process Based Procedural Protections,* 135 Pa.L.Rev. 1657 (1987); Redish, *Constitutional Federalism and Judicial Review,* 62 N.Y.U. L.Rev. 1 (1987).

adequately protected by the political process.

E. Plaintiffs, last two contentions, both based on 5 U.S.C. § 706, will be considered together. This statute provides, in part, as follows:

The reviewing court shall—

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

5 U.S.C.A. § 706(2)(A) (West 1977).

■ In *Overton Park*, the Supreme Court made clear that the court's obligation under this statute is threefold. The court must consider, first, whether the agency acted within the scope of its authority; second, whether the actual choice made by the agency was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; and third, whether the agency followed the procedural requirements. 401 U.S. at 415–17, 91 S.Ct. at 823–24.

■ The action of a federal agency which exceeds its authority is invalid and will be set aside. *Steele v. Federal Communications Commission*, 770 F.2d 1192 (D.C.Cir.1985). The beginning point for a determination of the Secretary's authority is the statutes [12] themselves. *Department of Transportation v. Paralyzed Veterans of America*, 477 U.S. 597, 604, 106 S.Ct. 2705, 2710, 91 L.Ed.2d 494 (1986). The real point of contention between the parties, the resolution of which is determinative of this matter, is to whom do the contract compliance laws apply?

■ The Executive Order applies to "the contractor." Both the Rehab Act and VEVRAA apply to "the party contracting with the United States." Regulations adopted by the Department of Labor to implement the contract compliance laws contain definitions which are pertinent to the inquiry.

In the regulations implementing the Executive Order, the following definitions appear:

"Government Contract" means any agreement ... between any contracting agency and any person for the furnishing of supplies or services or for the use of real or personal property, including lease arrangements.

"Contracting Agency" means any department, agency, establishment, or instrumentality in the executive branch of the Governmment....

"Person" means any natural person, corporation, partnership, unincorporated association, State or local government, and any agency, instrumentality, or subdivision of such a government.

41 C.F.R. § 60–1.3.[13]

Plaintiffs' basic contention is simple and straightforward; i.e., that since neither the University of North Carolina nor the University of North Carolina at Asheville nor the North Carolina School of the Arts is a party to any contract with a contracting agency, the two named constituent institutions are not subject to the contract compliance laws. They are not a "contractor" or "contracting party" in their own name nor are they an "agency, instrumentality, or subdivision" of a "person" which is a party to a government contract. Yet, this basic contention has never been met either in the various orders of the ALJ and the Secretary or the brief of defendants in this action. Rather, they continue to attempt to answer the contention by asserting that the University of North Carolina is a single state agency, an obvious fact which plaintiffs have never denied. The Orders go to great length to recite the organizational structure of the university system and the powers and duties of those entrusted with its administration without stating why a constituent institution within the university system cannot be a contractor within the

---

**12.** Including the Executive Order.

**13.** 41 C.F.R. § 60–250.2, dealing with VEVRAA, and 41 C.F.R. § 60–741.2, dealing with the Re-

hab Act, contain nearly identical definitions, the differences being insignificant and not material to a decision here.

meaning of the contract compliance laws. The Acting Secretary, Dennis E. Whitfield, referred to this contention when he stated in his Decision and Final Administrative Order, at page 6:

The fact that the government contracts of some constituent institutions were entered into without review or approval by the Board of Governors or by the other constituent institutions has little bearing on the issue here. The constituent institutions, their chancellors and other officers have delegated power to contract, but that delegation does not make them separate and independent of the University.... [T]he constituent institutions of UNC act as agents of the University and remain subject to the control of and responsible to the Board of Governors and the President. The constituent institutions are capable of entering into contracts only as agents of UNC because, under state law, only UNC, and not the constituent institutions, is a corporate body with the power to contract.[14]

The above portion of the Secretary's order is, with one exception, supported by the record.

N.C.Gen.Stat. § 116–11(13) provides:

The Board [of Governors] may delegate any part of its authority over the affairs of any institution to the board of trustees or, through the President, to the chancellor of the institution in any case where such delegation appears necessary or prudent to enable the institution to function in a proper and expeditious manner. Any delegation of authority may be rescinded by the Board at any time in whole or in part.

Thus, contrary to the statement in the Secretary's order, under the law of the State of North Carolina the power to contract may properly be delegated to the constituent institutions. The Secretary's order recognizes that such delegation of

authority has taken place. And, as plaintiffs point out, the contracting agencies in the 277 government contracts apparently do not contend that the contracts are invalid. Surely the various government agencies would not have entered contracts having a value in excess of $48 million without having first determined that the contractors had the power and authority to contract.

Defendants contend that if plaintiffs' argument is accepted OFCCP would be hamstrung in carrying out its duties as it would have to "pierce the corporate veil" to "determine whether (1) the corporation has authorized its facilities or divisions to contract independently, and (2) if so, whether government contracts were made without review or approval at higher levels." In fact, the opposite appears to be true. As it is undisputed that neither the University of North Carolina nor the Board of Governors of the University of North Carolina is a party to any of the contracts, someone at OFCCP had to "pierce the corporate veil" or do some extraneous research to determine that Appalachian State University was a constituent institution of the University of North Carolina.[15]

Defendants further contend that this construction of the contract compliance laws would bring OFCCP's compliance efforts to a standstill as it would require OFCCP before initiating a compliance review to "gather all government contracts [16] from the 59 separate Federal contracting agencies in order to ascertain whether, at that moment in time, a given corporate division or facility has a contract with the government or, alternatively, whether corporate headquarters had authorized a contract." This bleak scene, as painted by defendants, is unconvincing. In the first place, OFCCP must obtain the list of con-

---

14. This order was entered on 23 January 1989 during the change in administrations in Washington when the office of Secretary of Labor was vacant.

15. None of the contracts are a part of the record. Only the stipulation and computer

printout lists the names of the constituent institutions which have government contracts. *See* n. 6.

16. An estimated 21 million.

tractors somewhere [17] unless OFCCP feels that it is free to presume that every "... natural person, corporation, partnership, unincorporated association, State [and] local government, and [every] agency, instrumentality, [and] subdivision [thereof]" [18] has a government contract with such "person" having the burden of proving that no contract exists. Secondly, as already pointed out the "authorization" argument just does not hold water.

Defendants contend that this court is obliged to give "special deference" to the interpretation placed on these laws by the Department of Labor inasmuch as it is charged with the enforcement of the laws. The statement of law is correct. *United States v. New Orleans Public Service, Inc.*, 553 F.2d 459, 465 (5th Cir.1977), *vacated and remanded on other grounds*, 436 U.S..942, 98 S.Ct. 2841, 56 L.Ed.2d 783 (1978). The application, however, is flawed. This court is not required to blindly follow an erroneous interpretation of the law by an agency charged with the law's enforcement. Otherwise, judicial review of agency decisions would be meaningless. Defendants seek to complicate an otherwise simple task. A "contractor" is, as defendants' regulations state, a "person" who has a government contract, nothing more, nothing less.

If the President and Congress had intended the contract compliance laws to embrace all institutions of higher learning in a state when one of the institutions entered into a government contract it would have been easy enough to so provide. It is not the province of this court, or the Department of Labor, to place expansive and strained construction on simple words to accomplish such a result.

## VI

For the reasons set forth above, the court concludes that the decision of the Secretary of Labor is not in accordance with law. An order will issue making the injunctive relief heretofore granted permanent.

---

**17.** Counsel was unable to inform the court at oral argument just how the list of contractors is obtained!!

**18.** 41 C.F.R. § 60–1.3.