Alberta Krupp, Plaintiff-Appellant, v. Cecelia Sackwitz and Bernard A. Sackwitz, Co-administrators of the Estate of Albert F. Sackwitz, Deceased, Defendants-Appellees.

Gen. No. 61–F–18.

Fourth District.
May 11, 1961.

Baltz & Guymon, of Belleville, for appellant.

Dreman and Sterling, of Belleville, for appellee.

SCHEINEMAN, J.

This proceeding originated in Probate Court and was heard de novo in the Circuit Court. The purpose was to have plaintiff declared to be an heir of Albert F. Sackwitz, deceased. The prayer was denied after a hearing by the court without a jury. Plaintiff appealed to the Supreme Court, which transferred the case to this court.

The plaintiff was born out of wedlock, and her mother filed a suit in County Court in 1918 under the applicable statute then in force. A jury found that Albert F. Sackwitz was the father, and he was ordered to pay certain sums to the mother. He complied with that order, and there is some evidence that he made further voluntary contributions toward plaintiff's support and education.

There was also testimony of two witnesses as to statements made by Mr. Sackwitz some twenty-five years ago, purporting to acknowledge plaintiff as his daughter. On this appeal the defense denies that the evidence is sufficient to establish such acknowledgment, but, regardless of that point, contends that plaintiff is not an heir under existing law in this state.

The theory advanced for plaintiff is that the law imposes undue hardship upon her and deprives her of her natural right to inherit. It is argued that the modern trend of thought is to be more liberal toward the illegitimate child, and that the courts should disregard precedent and declare a public policy on the subject, to the extent of conferring on illegitimates the status of heirs on the paternal side.

There is no doubt that the past century has seen considerable change in the public attitude toward the child born out of wedlock. At common law it could not inherit from anyone. As stated by Blackstone, Vol. 1, p. 459, such a child "cannot be heir to anyone, neither can he have heirs but of his own body."

The harshness of these rules has been tempered by statutes, which conferred reciprocal rights of inheritance upon mother and child, and required some monetary contribution from the father upon proof of his identity.

The present statute as to inheritance rights of illegitimate children is in Section 163 of Chap. 3, Ill. Rev. Stat. It may be noted that the general section "162" includes "parents" as heirs, absent certain other kin, while this special section as to illegitimates, substitutes the word "mother" for "parents." The concluding sentence gives a limited status as to the father, as follows:

> "An illegitimate child, whose parents have intermarried and whose father has acknowledged him or her as his child, shall be considered legitimate."

452

It may be further observed that in 1957 the legislature adopted the Paternity Act (Chap. 106¾ Ill. Rev. Stat.) which requires the identified father to support the child until eighteen years of age. This statute eliminates the use of such words as "bastard", and does not even classify children as illegitimate, nor use the word, except to disclaim any change in that status except as expressly provided in the act.

It is therefore, clear that the legislature has enacted laws for the express purpose of applying its regulatory powers to the child born out of wedlock. It is the province of the courts to interpret statutes, and to give effect to the intention it finds. It is not the province of the courts to amend substantive law either by denying its application to situations clearly included, or by extending it to situations clearly not included.

Under existing statutory law the illegitimate child may inherit from its father if, (1) the parents are identified, (2) they intermarry, and (3) the father acknowledges the child as his. Since plaintiff's mother was never married to the deceased father, plaintiff does not meet the requirements. Miller v. Pennington, 218 Ill 220, 75 NE 919; Brainard v. Brainard, 373 Ill 459, 26 NE 2d 856.

Plaintiff's counsel strongly contends that the principle of stare decisis should not prevent a court from rectifying an unjust ruling. The argument is valid as to common law decisions, which are really judge-made law, and occasions do arise in which a court properly finds that some prior decision was illogical, or that the reasoning is no longer valid under changed conditions.

This function of the courts must be carefully restricted when the legislature has spoken on the subject. Every session receives a flood of bills designed to correct what the sponsors deem to be injustices in existing law. As the elected representatives of the

people, it is the function of the General Assembly to consider the supposed defects. When it does not enact changes in statutory law, after ample opportunity to do so, and after the courts have spoken, this is an indication the legislative intent is correctly interpreted. In re Estate of Quinn, 283 Ill. App. 597; 50 Am. Jur. Statutes, Sec. 326.

This case presents a cogent example: If the legislature had never entered this field, it is probable that the courts would have ameliorated some of the rigors of the common law. But even in that conception, it may be doubted that the courts would alter the law of descent. There are too many problems of effective date and ex-post facto application of the law.

The plaintiff's father may have lived in the belief that the laws of descent were satisfactory and so he died intestate. The courts are now asked to change the law after his death and divert his estate in a manner differing from that which he is presumed to have known to be the law.

The trial judges ruled in accordance with established law. Whether that law should, or could properly, be changed, is a question for the legislature, and this court declines to usurp that function. The judgment of the Circuit Court is affirmed.

Judgment affirmed.

CULBERTSON, P. J. and HOFFMAN, J., concur.