*In re* ESTATE OF LOUIS KARAS, Deceased—(MARY SODERMARK, Petitioner-Appellant, *v.* EVANGELIA KARAS, Respondent-Appellee.)

(No. 59006; )

First District (1st Division)—July 15, 1974.

James R. Phelps and Wayne R. Andersen, both of Burditt and Calkins, of Chicago, for appellant.

Gerald W. Shea, of Chicago, for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

An order was entered in the circuit court of Cook County, County Department, Probate Division, declaring that the deceased Louis Karas left him surviving Evangelia Karas, his widow, as his only heir at law and next of kin. Thereafter a petition, later amended, was filed by Mary Sodermark seeking to vacate that order. Upon motion of the widow the said amended petition was stricken and dismissed. The appeal now before us is from that order.

The petitioner states the two issues as follows:

"1. Does the Illinois Probate Act permit a child born out of wedlock and acknowledged by her father to inherit from her intestate father in the absence of intermarriage between her parents?

2. If the Illinois Probate Act denies an illegitimate child the right to inherit from her intestate natural father, is this denial a violation of the Equal Protection and Due Process clauses of the Fourteenth Amendment to the United States Constitution and of Sections Two and Eighteen of Article I of the Constitution of the State of Illinois."

We answer these both in the negative and affirm.

The circumstances surrounding this petition and appeal may be summarized as follows: Louis Karas died on July 8, 1971. In December of that year an order was entered in the probate division of the circuit court of Cook County declaring the respondent to be his sole heir. An

administrator was appointed for the estate, as Louis Karas died intestate. In November of 1972, Mary Sodermark filed a petition in the probate court seeking to vacate the order of heirship previously entered, and to have herself declared an heir of Louis Karas, alleging that she was his acknowledged natural daughter, although the deceased and her mother had never married. The respondent filed a motion to strike and dismiss the amended petition of Mrs. Sodermark, pursuant to the provisions of section 12 of the Illinois Probate Act (Ill. Rev. Stat. 1971, ch. 3, par. 12), on the ground that, since no marriage had ever occurred between the petitioner's parents, that section precluded Mrs. Sodermark from being considered as an heir of Louis Karas. The court held that the section did have such an effect, and that the section did not violate any of the petitioner's constitutional rights. Also, for the purpose of this ruling only, the court found that Mrs. Sodermark was the acknowledged daughter of Louis Karas, and that Louis Karas had never married her mother. Mrs. Karas does not concede the issue of parentage, and the administrator of the estate of Louis Karas has not taken a position on any of these matters.

As above stated, the first issue as stated by the petitioner, is:

> "Does the Illinois Probate Act permit a child born out of wedlock and acknowledged by her father to inherit from her intestate father in the absence of intermarriage between her parents?"

The argument under this issue is not really that the Illinois Probate Act by its terms permits such a child to inherit under said facts; rather, it is conceded that the statute does not, but the contention made is that, because the common law rule that "a bastard is kin to no one" (Blackstone, Vol. 1, Commentaries on the Law of England, p. 459) was created by the courts, they have the power to and should now alter the common law, which is recognized, although softened, by said statute.

■■ This same argument, involving this same statute, was presented and fully disposed of (*Krupp v. Sackwitz* (1961), 30 Ill.App.2d 450, 174 N.E.2d 877), where, under very similar facts, the Appellate Court for the Fourth District, through Mr. Justice Scheineman, in affirming a like order at pages 452-454, said:

> "The theory advanced for plaintiff is that the law imposes undue hardship upon her and deprives her of her natural right to inherit. It is argued that the modern trend of thought is to be more liberal toward the illegitimate child, and that the courts should disregard precedent and declare a public policy on the subject, to the extent of conferring on illegitimates the status of heirs on the paternal side.

There is no doubt that the past century has seen considerable change in the public attitude toward the child born out of wedlock. At common law it could not inherit from anyone. As stated by Blackstone, Vol. 1, p. 459, such a child 'cannot be heir to anyone, neither can he have heirs but of his own body.'

The harshness of these rules has been tempered by statutes, which conferred reciprocal rights of inheritance upon mother and child, and required some monetary contribution from the father upon proof of his identity.

The present statute as to inheritance rights of illegitimate children is in Section 163 of Chap. 3, Ill. Rev. Stat. It may be noted that the general section '162' includes 'parents' as heirs, absent certain other kin, while this special section as to illegitimates, substitutes the word 'mother' for 'parents.' The concluding sentence gives a limited status as to the father, as follows:

'An illegitimate child, whose parents have intermarried and whose father has acknowledged him or her as his child, shall be considered legitimate.'

It may be further observed that in 1957 the legislature adopted the Paternity Act (Chap. 106¾ Ill. Rev. Stat.) which requires the identified father to support the child until eighteen years of age. This statute eliminates the use of such words as 'bastard', and does not even classify children as illegitimate, nor use the word, except to disclaim any change in that status except as expressly provided in the act.

It is therefore, clear that the legislature has enacted laws for the express purpose of applying its regulatory powers to the child born out of wedlock. It is the province of the courts to interpret statutes, and to give effect to the intention it finds. It is not the province of the court to amend substantive law either by denying its application to situations clearly included, or by extending it to situations clearly not included.

Under existing statutory law the illegitimate child may inherit from its father if, (1) the parents are identified, (2) they intermarry, and (3) the father acknowledges the child as his. Since plaintiff's mother was never married to the deceased father, plaintiff does not meet the requirements. Miller v. Pennington, 218 Ill. 220, 75 NE 919; Brainard v. Brainard, 373 Ill. 459, 26 NE2d 856.

Plaintiff's counsel strongly contends that the principle of stare decisis should not prevent a court from rectifying an unjust ruling. The argument is valid as to common law decisions, which are

really judge-made law, and occasions do arise in which a court properly finds that some prior decision was illogical, or that the reasoning is no longer valid under changed conditions.

This function of the courts must be carefully restricted when the legislature has spoken on the subject. Every session receives a flood of bills designed to correct what the sponsors deem to be injustices in existing law. As the elected representatives of the people, it is the function of the General Assembly to consider the supposed defects. When it does not enact changes in statutory law, after ample opportunity to do so, and after the courts have spoken, this is an indication the legislative intent is correctly interpreted. In re Estate of Quinn, 283 Ill.App. 597; 50 Am. Jur. Statutes, Sec. 326.

This case presents a cogent example: If the legislature had never entered this field, it is probable that the courts would have ameliorated some of the rigors of the common law. But even in that conception, it may be doubted that the courts would alter the law of descent. There are too many problems of effective date and ex-post facto application of the law."

We conclude that this decision accurately reflects the law of Illinois, thus disposing of the petitioner's first contention.

This brings us to the petitioner's second main contention, in substance that the Illinois statute involved violates Federal and State constitutional provisions relating to due process and equal protection of the laws.

■■ The petitioner first urges that the statute violates the Constitution in that it discriminates against fathers of illegitimate children, who, unlike the mothers of these children, must have their children legitimized before those children may inherit from them should the fathers die intestate. We find this point to be devoid of merit. The petitioner is not the father of an illegitimate child. Furthermore, the father was not deprived of any right to have his property (other than his widow's statutory share) pass to his illegitimate child if he wished it so to pass. All he had to do was to make out a one-page will, leaving property to his illegitimate child.

As was said in *Krupp v. Sackwitz* (1961), 30 Ill.App.2d 450, 454, 174 N.E.2d 877, heretofore cited and discussed at length:

"The plaintiff's father may have lived in the belief that the laws of descent were satisfactory and so he died intestate. The courts are now asked to change the law after his death and divert his estate in a manner differing from that which he is presumed to have known to be the law."

Nor do we see any way in which the statute discriminates between

illegitimates on the basis of sex, as if for instance the statute would only permit male illegitimates to inherit. Therefore this portion of her argument is not persuasive.

■■ The petitioner's strongest argument is that the statute unreasonably discriminates between legitimate and illegitimate children whose fathers die intestate, because the illegitimates may not inhereit in this circumstance, unless they are acknowledged by their fathers and their parents intermarry. But the principal flaw in this argument is the *sine qua non* assumption that, under Illinois law, children somehow have a basic *right* to inherit from their parents. *There is no such right under Illinois law.* It is the parent's not the child's right to elect how much and to whom (except for the spouse's statutory share) his property shall pass on his death, and the only real issue in such a case is what did the parent intend when he died leaving no will.

■■ As pointed out in *Krupp,* it must be presumed that Louis Karas knew that, under Illinois law, none of his property would pass to his illegitimate daughter on his death unless he left a will providing otherwise, and that he was satisfied that she receive nothing from him and that all of his property pass instead to his lawful wife, the respondent.

The United States Supreme Court has recently passed on this argument adversely to the petitioner's position.

In *Labine v. Vincent* (1971), 401 U.S. 532, 28 L.Ed.2d 288, 91 S.Ct. 1017, a baby girl, Rita Vincent, was born to Lou Bertha Patterson (now Labine) in Louisiana. Shortly thereafter her said mother and Ezra Vincent acknowledged in writing before a notary that he was her natural father. This did not, under Louisiana law, give her a legal right to share with legitimate children in the parent's estate but it did give her a right to claim support from her parents or their heirs and did give her the capacity under Louisiana law to be a limited beneficiary under her father's will in the event he left a will naming her, which he did not do, since he died intestate.

Louisiana law gave legitimate children a right of forced inheritance in their father's estate and they can even retrieve property transferred by their father in his lifetime in reduction of their rightful interests. As the opinion sets out at page 537:

> "Louisiana also has a complex set of rules regarding the rights of illegitimate children. Children born out of wedlock and who are never acknowledged by their parents apparently have no right to take property by intestate succession from their father's estate. In some instances, their father may not even bequeath property to them by will. Illegitimate children acknowledged by their fathers are 'natural children.' Natural children can take from their father

by intestate succession 'to the exclusion only of the State.' They may be bequeathed property by their father only to the extent of either one-third or one-fourth of his estate and then only if their father is not survived by legitimate children or their heirs. Finally, children born out of wedlock can be legitimated or adopted, in which case they may take by intestate succession or by will as any other child."

There being no surviving wife or legitimate children, the state trial court held that, under Louisiana's laws of intestate succession, the father's collateral relatives took his property to the exclusion of acknowledged, but not legitimized, illegitimate children. The court of appeals affirmed and the Supreme Court of Louisiana denied certiorari. The child's guardian appealed to the United States Supreme Court, which noted probable jurisdiction.

■■ In affirming the state courts' action, the Supreme Court (5—4), through Mr. Justice Black, at pages 537-540, said:

"These rules for intestate succession may or may not reflect the intent of particular parents. Many will think that it is unfortunate that the rules are so rigid. Others will think differently. But the choices reflected by the intestate succession statute are choices which it is within the power of the State to make. The Federal Constitution does not give this Court the power to overturn the State's choice under the guise of constitutional interpretation because the Justices of this Court believe that they can provide better rules. Of course, it may be said that the rules adopted by the Louisiana Legislature 'discriminate' against illegitimates. * * * But the power to make rules to establish, protect, and strengthen family life as well as to regulate the disposition of property left in Louisiana by a man dying there is committed by the Constitution of the United States and the people of Louisiana to the legislature of that State. Absent a specific constitutional guarantee, it is for that legislature, not the life-tenured judges of this Court, to select from among possible laws. We cannot say that Louisiana's policy provides a perfect or even a desirable solution or the one we would have provided for the problem of the property rights of illegitimate children. Neither can we say that Louisiana does not have the power to make laws for distribution of property left within the State.

We emphasize that this is not a case, like *Levy*, where the State has created an insurmountable barrier to this illegitimate child. *There is not the slightest suggestion in this case that Louisiana has barred this illegitimate from inheriting from her father. Ezra*

*Vincent could have left one-third of his property to his illegitimate daughter had he bothered to follow the simple formalities of executing a will.* He could, of course, have legitimated the child by marrying her mother in which case the child could have inherited his property either by intestate succession or by will as any other legitimate child. Finally, he could have awarded his child the benefit of Louisiana's intestate succession statute on the same terms as legitimate children simply by stating in his acknowledgment of paternity his desire to legitimate the little girl. See *Bergeron v. Miller,* 230 So.2d 417 (La.App. 1970).

In short, we conclude that in the circumstances presented in this case, there is nothing in the vague generalities of the Equal Protection and Due Process Clauses which empowers this Court to nullify the deliberate choices of the elected representatives of the People of Louisiana." (Emphasis ours.)

This sufficiently disposes of the petitioner's second contention.

We therefore conclude that the trial court correctly held that Louis Karas' widow was his only heir at law.

Judgment affirmed.

EGAN, P. J., and GOLDBERG, J., concur.